[Docket No. 16]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| STERN & EISENBERG, P.C.,<br><br>          Plaintiff,<br><br>     v.<br><br>SENTINEL INSURANCE COMPANY,<br>LIMITED, et al.,<br><br>          Defendants. | Civil No. 20-11277 (RMB/KMW)<br><br>**OPINION** |

**APPEARANCES**
ASHLEY SOBLE NECHEMIA and ROBERT WINFIELD WILLIAMS
MATTLEMAN, WEINROTH & MILLER, P.C.
401 ROUTE 70 E
SUITE 401
CHERRY HILL, NEW JERSEY 08034

   *On behalf of Plaintiff*

JAMES L. BROCHIN
STEPTOE & JOHNSON LLP
1114 AVENUE OF THE AMERICAS
35TH FLOOR
NEW YORK, NEW YORK 10036

   *On behalf of Defendant Sentinel Insurance Company, Limited*

**RENÉE MARIE BUMB, United States District Judge**

This matter comes before the Court on the Motion to Dismiss brought by Defendant Sentinel Insurance Company, Limited ("Sentinel"). [Docket No. 16.] For the reasons expressed below, the Court will grant Sentinel's Motion.

**I.      FACTUAL BACKGROUND[1]**

Plaintiff Stern & Eisenberg P.C. ("Plaintiff") is a full-service law firm with locations in Delaware, Maryland, New Jersey, New York, and Pennsylvania that, like many businesses, was adversely affected by the global COVID-19 pandemic. Prior to the events that led to this case, Plaintiff obtained "a Spectrum Business Owner's Policy from [co-Defendant] The Hartford" (the "Policy"). [Docket No. 1-1, ¶ 9.] "The insurer under the Policy is Sentinel." [Id., ¶ 10.] The Policy was for the period of November 1, 2019 to November 1, 2020 and included as Covered Property seven locations.[2] The Policy provides that Sentinel "will pay for direct physical loss of or physical damage to Covered Property . . . caused by or resulting from a Covered Cause of Loss." [Docket No. 16-2, at 63 (PDF pagination).] A "Covered Cause of Loss" is a "risk[] of direct physical loss," unless specifically excluded or

---

[1] This factual background is taken from the Complaint, exhibits attached thereto, and matters of public record. See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (stating that a court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record") (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

[2] Specifically, it covered Plaintiff's offices in Newark, Delaware; Nottingham, Maryland; Cherry Hill, New Jersey; Iselin, New Jersey; Depew, New York; 1581 Main Street, Suite 200, Warrington, Pennsylvania; and 1565 Main Street, Suite 200, Warrington, Pennsylvania.

limited by the Policy. [Id. at 65 (PDF pagination) (alterations omitted).]

The Policy includes three relevant inclusionary provisions (Business Income, Extra Expense, and Civil Authority) and one relevant exclusionary provision (the Virus Exclusion). The Business Income provision provides that Sentinel

> will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the "scheduled premises" . . . caused by or resulting from a Covered Cause of Loss.

[Id. at 72 (PDF pagination).] The Extra Expense provision covers "reasonable and necessary Extra Expense you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or physical damage to property at the 'scheduled premises' . . . caused by or resulting from a Covered Cause of Loss." [Id. at 72 (PDF pagination).][3] The Civil Authority provision covers "actual loss of Business Income you sustain when access to your 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your 'scheduled premises,'" when such damages were sustained during the

---

[3] The Policy defines "period of restoration" as the period of time ending "when the property at the described premises should be repaired, rebuilt or replaced." [Docket No. 1-1, at 111 (PDF pagination).]

3

"30 consecutive days after the order of the civil authority." [Id. at 73 (PDF pagination).]

Meanwhile, the Virus Exclusion provides that Sentinel

> will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:
>
> (1) Presence, growth, proliferation, spread or any activity of "fungi", wet rot, dry rot, bacteria, or virus.

[Id. at 190 (PDF pagination).] The Virus Exclusion has two exceptions that the parties agree do not apply here.

Between March 9, 2020 and March 24, 2020, various civil authorities, including the Governors of each of the states where Covered Properties are located, issued various executive orders and declarations that required Plaintiff to suspend its operations. [See Docket No. 1-1, ¶¶ 16-28.] Plaintiff alleges that, as a result of those orders and declarations, it "suffered a direct physical loss of and damage to its property because it has not been unable [sic] to use its property for its intended purpose." [Id., ¶ 28.] On March 18, 2020, Plaintiff submitted a claim for coverage, which was denied. [See id., ¶¶ 29-30.]

II. **PROCEDURAL HISTORY**

Plaintiff filed the present action, on behalf of itself and others similarly situated, in the Superior Court of New Jersey, Camden County, on July 21, 2020. [Docket No. 1-1.] Sentinel removed

4

the case to this Court on August 24, 2020. [Docket No. 1.] The parties exchanged pre-motion letters, in accordance with the Court's Individual Rules and Procedures, in September and November 2020. [Docket Nos. 11, 12.] The Court declined to hold a pre-motion conference, [Docket No. 13], and Sentinel filed its Motion to Dismiss on October 13, 2020, [Docket No 11]. Plaintiff timely filed its response in opposition on November 9, 2020. [Docket No. 23.] Sentinel timely filed its reply on December 7, 2020. [Docket No. 26.] Moreover, Sentinel has supplemented its briefs in light of other courts addressing similar legal issues. [See Docket Nos. 27-29.]

**III. JURISDICTION**

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. Plaintiff is a professional corporation organized under the laws of New Jersey with its principal place of business in Cherry Hill, New Jersey.[4] [See Docket No. 1-1, ¶ 1.] Sentinel

---

[4] The Court adopts the following citizenship analysis provided by another court in this District:
> Even though the Third Circuit has not specifically held that a professional corporation should be treated as a traditional corporation, see Lincoln Ben. Life Co. v. AEI Life, LLC, 800 F.3d 99, 113 (3d Cir. 2015) (citing WRIGHT, MILLER, ET AL., 13F FED. PRAC. & PROC. § 3630.1 (3d ed. 2015)) (explaining that "some circuits treat professional corporations, which function much like LLCs, as traditional corporations"), several circuits

5

is a Connecticut corporation with its principal place of business in Hartford, Connecticut. [See Docket No. 1, ¶ 1.]

**IV. STANDARD**

    **A.    Motion to Dismiss Standard**

When considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well-settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . .

---

    have come to that conclusion. Because New Jersey appears to treat a professional corporation the same as a traditional corporation, this Court finds that the citizenship of a New Jersey professional corporation is the same as a traditional corporation under 28 U.S.C. § 1332(c)(1).

Archer & Greiner v. Rosefielde, Civil No. 16-4023-NLH-AMD, 2017 U.S. Dist. LEXIS 89391, at *6 n.2 (D.N.J. June 12, 2017) (citations omitted).

6

." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. Of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (citations omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009)). A court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions'

7

. . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

### B. Applicable Law for Insurance Policy Interpretation

In New Jersey, there are several principles that guide a court's interpretation of an insurance policy. First, such an interpretation is a question of law. See Causeway Automotive, LLC v. Zurich Am. Ins. Co., Civil Action No. 20-8393 (FLW) (DEA), 2021 WL 486917, at *3 (D.N.J. Feb. 10, 2021) ("Under New Jersey law, the determination of 'the proper coverage of an insurance contract is a question of law.'" (quoting Buczek v. Cont'l Cas. Ins. Co., 378 F.3d 284, 288 (3d Cir. 2004))). Second, an insurance policy will be enforced as written when its terms are unambiguous. See Flomerfelt v. Cardiello, 997 A.2d 991, 996 (N.J. 2010) ("An insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled."). And third, the Court will not consider extrinsic evidence in interpreting the contract if the language of the contract is unambiguous. See Manahawkin Convalescent v. O'Neill, 85 A.3d 947, 958-59 (N.J. 2014) ("If the

8

language of a contract is plain and capable of legal construction, the language alone must determine the agreement's force and effect.") (alterations omitted).

## V. ANALYSIS

Plaintiff's Complaint alleges fifteen claims: Breach of Contract for each Covered Property (Counts I-VII), Declaratory Judgment for each Covered Property (Counts VIII-XIV), and Breach of the Covenant of Good Faith and Fair Dealing (Count XV). [Docket No. 1-1, ¶¶ 31-113.] All the claims require as a threshold matter that Plaintiff is entitled to coverage under the Policy due to the circumstances outlined above, despite Sentinel's denial of Plaintiff's insurance claim.[5] In this instance, that would require both (1) that Plaintiff suffered "direct physical loss of or physical damage to Covered Property" and (2) that the Virus Exclusion does not apply. [See Docket No. 16-2, at 63 (PDF pagination).]

With respect to that threshold matter, the Court will assume arguendo and solely for the purposes of this Opinion that Plaintiff in fact suffered "direct physical loss of or physical damage to Covered Property." [Id.] However, even making that assumption, the Court finds that Plaintiff's claims fail due to the Virus

---

[5] Plaintiff agrees that Count XV is dependent on the remaining causes of action in the Complaint and that it should be dismissed if the other Counts are dismissed. [Docket No. 23-1, at 24.]

9

Exclusion. Sentinel's Motion to Dismiss argues "the Virus Exclusion in the Policy removes any possibility of coverage for Plaintiff's virus-related business losses." [Docket No. 16-1, at 9.] Specifically, the Virus Exclusion clearly and explicitly excludes from coverage any loss or damage caused by or resulting from a virus: "We will not pay for loss or damage caused directly or indirectly by . . . [the p]resence, growth, proliferation, spread or any activity of . . . virus." [Docket No. 16-2, at 190 (PDF pagination).]

Plaintiff argues that the Virus Exclusion is ambiguous.[6] [Docket No. 23-1, at 21-24.] Plaintiff argues that the context of

---

[6] Plaintiff makes three additional arguments, as well. First, it argues that Sentinel cannot rely on the Virus Exclusion in its Motion to Dismiss because it is an affirmative defense. [Docket No. 23-1, at 13-17.] The Court rejects this argument and will consider the Virus Exclusion in analyzing Sentinel's Motion. See, e.g., N&S Restaurant LLC v. Cumberland Mut. Fire Ins. Co., No. 20-cv-05289, 2020 WL 6501722, at *3 (D.N.J. Nov. 5, 2020) ("The Third Circuit and courts within this Circuit have regularly granted motions to dismiss in insurance cases when the plaintiff's allegations fall squarely within the policy's exclusion to coverage."); see also Causeway, 2021 WL 486917 (granting Motion to Dismiss based on a Virus Exclusion clause).
   Second, Plaintiff argues that the Court should not take judicial notice of the fact that COVID-19 is a virus, which fact Plaintiff has not conceded. [Docket No. 23-1, at 17-21.] The Court rejects this argument as well: "COVID-19 is a new disease, caused by a novel (or new) coronavirus that has not previously been seen in humans. Because it is a new virus, scientists are learning more each day." COVID-19 Frequently Asked Questions, CENTERS FOR DISEASE CONTROL & PREVENTION (last updated Apr. 2, 2021), https://www.cdc.gov/coronavirus/2019-ncov/faq.html (repeatedly referring to COVID-19 as a "virus").
   Third, Plaintiff argues that "[t]he New Jersey Supreme Court has not hesitated to bar the enforcement of exclusions contained

10

the Virus Exclusion "suggests that the exclusion is only intended to apply when a virus is physically present at the property." [Id. at 21.] Plaintiff relies on a Florida case to make this argument and points out that Sentinel "could have elected to use an exclusion that specifically excluded the losses suffered herein." [Docket No. 23-1, at 21-23 (citing Urogynecology Specialist of Florida LLC v. Sentinel Ins. Co., Ltd., 620CV1174ORL22EJK, 2020 WL 5939172 (M.D. Fla. Sept. 24, 2020).] Plaintiff argues that further discovery is needed to determine the intent and scope of the Virus Exclusion.

This argument was recently rejected by several Courts in this District analyzing the same Virus Exclusion. See Eye Care Ctr. of N.J., PA v. Twin City Fire Ins. Co., Civ. No. 20-05743 (KM), 2021 WL 457890 (D.N.J. Feb. 8, 2021). In that case, the Court stated that "there is no textual limitation indicating that the virus must be present at the property. Rather, the clause excludes coverage for losses caused by the spread of viruses generally, and adds that it extends to both direct and indirect causation." Id. at *3. The Court held that "[t]here [was] not a sufficient textual basis for [the plaintiff's] argument that the virus must be

---

in insurance policies when regulatory approval for such exclusions were obtained by misrepresentations to state regulators." [Docket No. 23-1, at 23.] However, Plaintiff makes no such allegation of Sentinel misrepresenting state regulators. Therefore, that argument is rejected as well.

physically present," and therefore rejected the argument. Id. (citing N&S Restaurant LLC v. Cumberland Mut. Fire Ins. Co., No. 20-cv-05289, 2020 WL 6501722, at *3 (D.N.J. Nov. 5, 2020). Other Courts in this Circuit have also held that the same Virus Exclusion was unambiguous. See ATCM Optical, Inc. v. Twin City Fire Ins. Co., Civil Action 20-4238, 2021 WL 131282, at *6-8 (E.D. Pa. Jan. 14, 2021); Moody v. Hartford Fin. Grp., Inc., Civil Action No. 20-2856, 2021 WL 135897, at *10 (E.D. Pa. Jan 14, 2021); TAQ Willow Grove, LLC v. Twin City Fire Ins., Civil Action No. 20-1863, 2021 WL 131555, at *8 (E.D. Pa. Jan 14, 2021); Wilson v. Hartford Cas. Co., Civil Action No. 20-3384, 2020 WL. 5820800, at *7 (E.D. Pa. Jan. 14, 2021).

A policy is ambiguous when it is susceptible to more than one reasonable interpretation. See Causeway, 2021 WL 486917, at *5 ("A genuine ambiguity exists in an insurance contract 'where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage.'" (quoting Lee v. Gen. Acc. Ins. Co., 767 A.2d 985, 987 (N.J. Super. Ct. App. Div. 2001))). Here, Plaintiff offers no compelling argument that the plain language of the Virus Exclusion is susceptible to two reasonable interpretations. Rather, the language is explicit and plainly excludes from coverage any loss "caused directly or indirectly by . . . [the p]resence, growth, proliferation, spread or any activity of . . . virus."

12

Therefore, this Court agrees with the numerous courts in holding that this Virus Exclusion is unambiguous. Because it is unambiguous, it precludes Plaintiff from coverage where the alleged losses were caused by a virus. Any losses that Plaintiff allegedly suffered were caused either by COVID-19 itself (a virus) or by the executive orders and declarations that forced Plaintiff to suspend its operations. This Court notes that those orders and declarations were themselves caused by the virus. See, e.g., Causeway, 2021 WL 486917, at *6 ("The Executive Orders were issued for the sole reason of reducing the spread of the virus that causes COVID-19 and would not have been issued but for the presence of the virus in the State of New Jersey. . . . [T]he 'but for' cause of Plaintiffs' losses was COVID-19—the Executive Orders and the virus are so inextricably connected that it is undeniable that the Orders were issued because [of] the virus.").

In sum, because (1) the Virus Exclusion is unambiguous, (2) the Virus Exclusion excludes from coverage any losses caused by a virus, (3) COVID-19 is a virus, and (4) the but for cause of Plaintiff's alleged losses and this case is COVID-19, Sentinel's denial of Plaintiff's insurance claim was appropriate. Therefore, Plaintiff's claims in this action are legally insufficient.

**VI. CONCLUSION**

For the reasons expressed above, the Court will grant Sentinel's Motion to Dismiss [Docket No. 16]. Plaintiff's

Complaint will be dismissed in its entirety. An accompanying Order shall issue.

| | |
|---|---|
| April 14, 2021 | s/Renée Marie Bumb |
| Date | RENÉE MARIE BUMB |
| | United States District Judge |